IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DREW CURTIS HARTLEY,**
    Petitioner,

v.                                                     Case No.  3:09cv42/MCR/MD

**D. ELLIS,**
    Respondent.
_____

### ORDER and
### REPORT AND RECOMMENDATION

This cause is before the court upon referral from the Clerk.  Petitioner initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging a disciplinary conviction he received on November 25, 2008.  (Doc. 1).  He filed an amended petition on March 10, 2009.  (Doc. 8).  The same day, he filed an Amended Motion for Order Granting Immediate Injunctive Relief, in which he sought to prevent the destruction of a videotape which he claimed was critical evidence relevant to the disciplinary conviction.  (Doc. 9).  Respondent filed a motion to dismiss for failure to exhaust administrative remedies, arguing that petitioner failed to present his claims to the state courts.  (Doc. 19).  The undersigned directed petitioner to respond.  (Doc. 20).  Instead of filing a response, petitioner filed a motion to amend accompanied by a proposed second amended petition.  (Docs. 24, 25).  The second amended petition is identical to the first amended petition with the exception that petitioner has included additional arguments why his petition should not be dismissed for failure to exhaust state court remedies, and he has included additional exhibits in support of his claims.  (Doc. 25).  In the interests of justice the motion to amend will be granted.

**Because it plainly appears from the face of the second amended petition and attached exhibits that petitioner is not entitled to federal habeas relief, the undersigned recommends dismissal of this cause without requiring further response from the respondent.** *See* Rule 4, Rules Governing Section 2254 Cases (providing that, upon preliminary review of a petition, if it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief, the judge must dismiss the petition); 28 U.S.C. § 2254(b)(2) (providing that an application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust state court remedies).

### BACKGROUND AND PROCEDURAL HISTORY

**Petitioner is a state inmate currently incarcerated at Santa Rosa Correctional Institution. He challenges a prison disciplinary conviction he received at Santa Rosa CI on November 25, 2008 (charging disciplinary report log #119-083001), for Disrespect to Officials occurring on November 17, 2008. The disciplinary report in question contained the following allegations of facts by Correctional Officer Cook:**

> Inmate Hartley, Drew DC#268221 is being charged with a violation of Chapter 33-601.314 Rules of Prohibited Conduct. (1-4) Disrespect to Officials. On November 17, 2008 at approximately 12:30PM, I was assigned as the F Dorm close management housing sergeant. I was in the sallyport interviewing newly assigned inmates to close management. Inmate Hartley, Drew DC# 268221 was in the sallyport and as I interviewed him he began to laugh and stated, "I don't give a fuck. I'm a lawyer and you motherfucker's [sic] can't tell me what to do! You're a stupid shit!" The dorm lieutenant was notified and authorized this report to be written.

(Doc. 25, App. at 15 in CM/ECF).[1] The investigating officer J.C. Roberts indicated that on November 22, 2008, he provided a copy of the written charge to petitioner. (*Id.*). In his investigative report he indicated that petitioner declined staff assistance

---

[1]Hereafter all references to documents are to those provided in the appendix (App.) attached to the second amended petition (Doc. 25). References to page numbers are to those appearing on the court's Case Management/Electronic Computer Filing system ("CM/ECF").

*Case No: 3:09cv42/MCR/MD*

and refused to participate in the investigation.  (Doc. 19, Ex. B).  Officer Roberts interviewed Sergeant Cook and wrote that Cook told him that all statements in the charging document were true and factual as written.  (*Id.*).  No other staff or inmates were interviewed.   Officer Roberts indicated on the Witness Disposition form that petitioner had no inmate witnesses or evidence.  In the space provided for petitioner to sign the form there is a notation, "Refused."  (*Id.*).

On November 25, 2008, a disciplinary hearing team composed of G. Waitman and K.W. Diermyer found petitioner guilty.  (*Id.*, at 17 in CM/ECF).  The basis for the decision, said the team, was a finding that petitioner disrespected an official by laughing and stating, "I don't give a fuck.  I'm a lawyer and you motherfucker's [sic] can't tell me what to do!  You are a stupid shit!" (*Id.*).  The only penalty imposed was 30 days in disciplinary confinement.  (*Id.*).

In this habeas action, petitioner seeks expungement of the DR from his inmate records, "sanctions for the destruction of videotape evidence," and the grant of incentive gain time he would have been eligible to earn had he not received the DR. (Doc. 25, p. 11 in CM/ECF).  He also requests that he be "put . . . back into the position he was at the time of the charge." (*Id.*).  Petitioner states he challenged the DR by exhausting his administrative appeals, but was unable to pursue judicial remedies  in the state courts because a judge of the Second Judicial Circuit Court of Leon County, Florida issued an order on May 30, 2007, providing:  (1) that petitioner is a vexatious civil litigant pursuant to Fla. Stat. § 68.093, (2) that the clerk of that court shall not file any new *pro se* action in the Leon County Circuit Court unless petitioner first obtains an order from the chief judge of that court permitting the filing, and (3) that any paper filed by petitioner must be signed by a member in good standing of The Florida Bar who certifies that the filing and the claims contained therein have merit. (Doc. 25, p. 12 in CM/ECF; *see also* App. at 32-34 in CM/ECF; Doc. 19, Ex. K, pp. 19-21 in CM/ECF).  Petitioner contends that for various reasons, including DOC rules governing photocopy services, restrictions on his

ability to make telephone calls, his inability to pay postage, his lack of access to publications listing Florida Bar members who assist prisoners without cost, etc. he has been unable to obtain the requisite certification of a member of The Florida Bar. (Doc. 25, pp. 12-14).

## DISCUSSION

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. In the instant case, petitioner claims his disciplinary conviction violates due process on the following grounds: (1) the correctional officer fabricated the statement forming the basis of the charge; (2) petitioner was denied an investigation into the charge because the investigating officer merely slid the written notice of the disciplinary charge under petitioner's cell door on November 22, 2008 without giving petitioner the opportunity to participate in the investigation; (3) petitioner was denied an impartial hearing body; and (4) the disciplinary team "falsely" noted that petitioner did not present any evidence even though petitioner had "notified" them of an inmate witness and also "urged" them to review the November 22, 2008 videotape which, according to plaintiff, would have shown that the investigating officer did not properly investigate the charge. (Doc. 25, pp. 5-10 in CM/ECF). Upon independent review of the merits of petitioner's claims, the undersigned concludes that petitioner has failed to show that the disciplinary conviction violated his due process rights.

Where a prison disciplinary hearing may result in the loss of good time credits, the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that the inmate must receive: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the

disciplinary action taken. *Id.*, 418 U.S. at 564-66. In a subsequent case, the Supreme Court addressed the quantum of evidence necessary to support the factfinder's decision. In *Superintendent, Mass. Correctional Inst. v. Hill*, 474 U.S. 445, 455-56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), the Court held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472 U.S. at 454 (citation omitted). The Court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *United States ex rel. Najtauer v. Commissioner of Immigration*, 273 U.S. [103], 106, 47 S.Ct. [302], 304, 71 L.Ed. 560. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.*, 472 U.S. at 455 (citations omitted).

The disciplinary hearing in the instant case, however, did not result in the loss of any earned gain time. The only penalty was 30 days in disciplinary confinement. In cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for 30 days, due process protections do not attach. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Sandin* reasoned that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." 515 U.S. at 485, 115 S.Ct. at 2301. The Court further held that the Due Process Claus protects interests "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300. The Court concluded that having to serve 30 days in disciplinary confinement was not an atypical hardship.

In light of the foregoing, the undersigned concludes that petitioner did not have a due process liberty interest in not being subject to 30 days of disciplinary

confinement. Therefore, his claims must fail. *Sandin, supra*; *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (holding that an inmate has no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement); *see also Hartley v. McNeil*, No. 5:07cv101/RS/EMT, 2008 WL 1844416 (N.D. Fla. Apr. 23, 2008), *mot. for certificate of appealability denied*, No. 08-14493 (11th Cir. Oct. 24, 2008) (denying habeas petition challenging disciplinary conviction which resulted in 30 days of disciplinary confinement; placement in disciplinary confinement for 30 days was not sufficient to invoke constitutional protection under *Sandin*); *Adamson v. McNeil*, No. 3:08cv231/RV/EMT, 2008 WL 5231869 (N.D. Fla. Dec. 12, 2008), *mot. for certificate of appealability denied,* No. 09-10206 (11th Cir. Mar. 25, 2009) (same); *Hartley v. McNeil*, No. 1:07cv22683, 2008 WL 3200213 (S.D. Fla. Aug. 6, 2008), *mot. for certificate of appealability granted on other grounds*, No. 08-15292 (11th Cir. Jan. 20, 2009) (same); *Hollingsworth v. Crosby*, 4:02cv402/RH/WCS (N.D. Fla. Oct. 14, 2003), *mot. for certificate of appealability denied*, No. 04-11328 (11th Cir. June 24, 2004) (same) .

Petitioner, however, argues that the disciplinary conviction deprives him of an earlier release from prison because it adversely affects his ability to earn incentive gain time. (Doc. 25, pp. 11, 14 in CM/ECF). He contends that Florida law creates a liberty interest in the opportunity or expectation of earning incentive gain time, thereby triggering due process protections. This argument should be rejected.

Eligibility to earn gain time in Florida varies depending upon the date of hte offense. Petitioner states he is currently in custody for offenses committed pursuant to a judgment entered in 2003. The Florida Department of Corrections website indicates that the relevant offenses were committed in 2002. In 2008, when this disciplinary action took place, petitioner's expectation of earning gain time was provided by Fla. Stat. § 944.275. The statute provides the following with respect to incentive gain time:

**(1) The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.**

**(2) (a) The department shall establish for each prisoner sentenced to a term of years a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.**

. . . .

**(3) (a) The department shall also establish for each prisoner sentenced to a term of years a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section. The initial tentative release date shall be determined by deducting basic gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.**

. . . .

**(4) (b) For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph. The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the inmate was sentenced.**

. . . .

**3. For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed. For purposes of this subparagraph, credits awarded by the court for time physically incarcerated shall be credited toward satisfaction of 85 percent of the sentence imposed. Except as provided by this section,**

> a prisoner shall not accumulate further gain-time awards at any point when the tentative release date is the same as that date at which the prisoner will have served 85 percent of the sentence imposed. State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.
>
> . . . .
>
> **(7) The department shall adopt rules to implement the granting, forfeiture, restoration, and deletion of gain-time.**

Fla. Stat. § 944.275 (West 2007).

The Florida Department of Corrections has adopted Fla. Admin. Code § 33-601.101, to provide procedures concerning awards of incentive gain time. Subsection (3) sets forth detailed methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components." Many factors are considered, including hygiene, appearance of clothing, adherence to rules and respect for others, maintenance of living quarters, work performance, and program performance. *Id.* Subsection (6) provides:

> Inmates in disciplinary confinement status are not eligible for a work/program rating even if assigned to work or programs while in disciplinary confinement. Inmates in disciplinary confinement are eligible for a security rating award which can be modified by the correctional probation officer in accordance with paragraph 33-601.101(3)(b), F.A.C.

Subsection (6)(a) provides that "[a]n inmate is not eligible to receive incentive gain time for the month in which there is an infraction of the rules of the Department or the laws of the State for which he is found guilty." Subparagraph 2 of that subsection provides that if an inmate is found guilty of a disciplinary report after April 21, 1996, for prisoners (like petitioner), who committed their criminal offenses after October 1, 1995 and who receive punishment of 30 days or less in confinement, the prisoner is ineligible to earn incentive gain time for another 3 months after the month of infraction.

Thus, after petitioner received this disciplinary action and 30 days confinement, he was not eligible to earn incentive gain time for the 30 days in disciplinary confinement and for the ensuing 3 months. But the expectation which

petitioner lost was entirely speculative. Whether petitioner might have been awarded incentive gain time in any given month depended upon a number of factors tied to his future behavior, and the amount of the award, if any, was entirely within the discretion of officials of the Department of Corrections who were making these evaluations.

*Sandin* speaks to this issue. In *Sandin*, the Court considered the petitioner's argument that the disciplinary decision affected the duration of his sentence because a record of prison misconduct could affect his eligibility for parole. *Id.* at 487. The Court observed that nothing in state law required the parole board to grant parole in the absence of prison misconduct, and the decision to grant parole "rest[ed] on a myriad of considerations." *Id.* The Court concluded that "[t]he chance that a finding of misconduct will alter the balance [in consideration of parole] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

Following *Sandin*, a number of Circuit Courts have held that there is no liberty interest and, therefore, no due process protection in the mere opportunity to earn gain time. *See Abed v. Armstrong*, 209 F.3d 63, 66-67 (2nd Cir. 2000) (holding that although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn good time credit); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (applying *Sandin* and holding that the loss of the opportunity to earn gain time is not a constitutionally protected liberty interest); *Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991) (pre-*Sandin* case holding that no liberty interest arose from possibility of discretionary grant of incentive good time; "When a statute is framed in discretionary terms there is not a liberty interest

created."); *see also, e.g., Hartley v. McNeil*, No. 5:07cv101/RS/EMT, 2008 WL 1844416, at *3-4 (concluding that the opportunity to earn incentive gain time provided by Florida law is not a sufficient liberty interest to invoke due process protections); *Hartley v. McNeil,* No. 1:07cv22683, 2008 WL 3200213 (S.D. Fla. Aug. 6, 2008), *mot. for certificate of appealability granted*, No. 08-15292 (11th Cir. Jan. 20, 2009) (concluding that liberty interests were not implicated by petitioner's loss of the eligibility to earn incentive gain-time because of his disciplinary report); *Hollingsworth v. Crosby*, No. 4:02cv402/RH/WCS, *supra* (holding that petitioner had no due process liberty interest in eligibility to earn incentive gain time).

Petitioner's remaining argument is that this and other disciplinary convictions were used to justify extending his term of close management and upgrading him from Close Management III to the more restrictive Close Management II custody status. (Doc. 25, p. 14 in CM/ECF, and App., p. 22 in CM/ECF). He makes the conclusory assertion that close management "poses an 'atypical and significant hardship.'"

The administrative rules of the Florida Department of Corrections (DOC) define Close Management as "the confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800(1)(d). There are three levels of Close Management, with CMI being the most restrictive single cell housing level and CMIII being the least restrictive level. Fla. Admin. Code r. 33-601.800(1)(d). CMII may or may not be restricted to single cell housing. Fla. Admin. Code r. 33-601.800(2)(b). According to the administrative rules, the only differences in the conditions and privileges of CMII and CMIII are the following: (1) inmates on CMII are allowed five food items from the canteen per week, whereas inmates on CMIII are allowed ten food items; (2) inmates on CMII are allowed only non-contact personal visits, whereas inmates on CMIII are allowed contact visits; (3) inmates on CMII are allowed

one telephone call every fourteen days, whereas inmates on CMIII are allowed one telephone call every seven days; (4) inmates on CMII are allowed access to the day room for social purposes for up to two days per week and must be restrained during day room access, whereas inmates on CMIII are allowed access to the day room for up to five days per week and are not required to be restrained; (5) inmates on CMII are eligible for work assignments only on restricted labor squads or in CMI, CMII or death row housing units, whereas inmates on CMIII are eligible for work assignments either inside or outside the close management unit; and (6) inmates on CMII must be restrained with handcuffs, waist chains, and leg irons prior to being escorted outside the housing unit or exercise areas, whereas inmates on CMIII need not be restrained. Fla. Admin. Code rr. 33-601.800(10, 11, 13, 14).

      Petitioner here has failed to show that the difference in the conditions of his confinement on CMII amount to an atypical and significant hardship as compared to his conditions on CMIII, his custody status prior to the disciplinary decision. (Doc. 25, App., p. 22 in CM/ECF). Therefore, petitioner has not shown that he had a constitutionally protected liberty interest in the change of his classification from CMIII to CMII. *Compare Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (pretrial detainee's allegations supported finding of liberty interest under *Sandin* where detainee alleged he was confined under extremely harsh conditions-in solitary confinement (under conditions unlike other pretrial detainees or even convicted prisoners), locked in an extremely small, closet-sized space, and with minimal contact with other human beings for a prolonged time exceeding 500 days), *with Adamson v. McNeil*, No. 3:08cv231/RV/EMT, 2008 WL 5231869, at *2-3 (N.D. Fla. Dec. 12, 2008), *mot. for certificate of appealability denied,* No. 09-10206 (11th Cir. Mar. 25, 2009) (concluding that disciplinary conviction resulting in 30 days disciplinary confinement and more restrictive custody classification from CMIII to CMII did not alter petitioner's term of imprisonment or impose an atypical and significant hardship on him in relation to ordinary incidents of prison life such as to trigger due process protections); *Chandler v. Haas*, No. 1:07cv145/MMP/AK, 2008 WL 2096380,

at *1 (N.D. Fla. May 16, 2008) (inmate has no liberty interest in being kept out of close confinement), *and Powell v. Ellis*, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *4 (N.D. Fla. Sept. 7, 2007) (plaintiff had no protected liberty interest in particular custody classification).

## CONCLUSION

Petitioner has failed to demonstrate that the November 25, 2008 disciplinary action (which resulted in his placement in disciplinary confinement for 30 days, affected his opportunity to earn incentive gain time, and affected his close management level) altered his term of imprisonment or imposed an atypical and significant hardship on him in relation to the ordinary incidents of his prison life. Therefore, the disciplinary proceeding for disrespect to officials was not subject to the procedures set forth in *Wolff* or the evidentiary standard set forth in *Hill*. The habeas petition challenging the disciplinary decision on due process grounds should therefore be denied, and this case dismissed.

Accordingly, it is ORDERED:

Petitioner's motion to amend (doc. 24) is GRANTED.

And it is respectfully RECOMMENDED:

1. That the second amended petition for writ of habeas corpus (doc. 25) challenging the disciplinary conviction dated November 25, 2008 (charging disciplinary report log # 119-083001) be DENIED, and that this case be DISMISSED WITH PREJUDICE.

2. That all pending motions (with the exception of the motion to amend granted herein) be DENIED as moot.

3. That the Clerk be directed to close the file.

At Pensacola, Florida this 6th day of July, 2009.

/s/ Miles Davis
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### **NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).